**COZEN O'CONNOR**
Valerie D. Rojas (State Bar No. 180041)
vrojas@cozen.com
601 South Figueroa Street, Suite 3700
Los Angeles, CA  90017
Telephone: (213) 892-7965
Facsimile:  (213) 784-9076
Counsel for Plaintiff SCOTTSDALE
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>v.<br><br>FLORA BIOSCIENCE, INC., a Delaware corporation,<br><br>and<br><br>ROBERT ROBBINS, a California resident,<br><br>and<br><br>MARC STOLL, a California resident,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

For its Complaint against Defendants Flora Bioscience, Inc. ("Flora"), Robert Robbins ("Robbins"), and Marc Stoll ("Stoll") (the "Defendants"), Plaintiff Scottsdale Insurance Company ("Scottsdale") states the following:

1. This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202, and 1332.

## PARTIES

2. Scottsdale is an insurance company duly organized and existing under the laws of the State of Ohio with its principal office located in Scottsdale, Arizona.

3. Flora is a Delaware corporation with its principal office located in the County of Santa Clara, California.

4. Robbins is a citizen of the State of California and, upon information and belief, is or was a member of the Board of Directors of Flora.

5. Stoll is a citizen of the State of California and, upon information and belief, is or was a member of the Board of Directors of Flora.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Scottsdale and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are in this District and Division.

## FACTUAL ALLEGATIONS

### The Policy

8. Scottsdale issued a claims-made-and-reported Business and Management Indemnity Policy No. EKS3258368 (the "Policy") to Flora, effective for the period from June 12, 2018 to June 12, 2019 (the "Policy Period"). A copy of the Policy is attached hereto as "Exhibit 1."

9. Subject to the Policy's terms, conditions, limitations, exclusions, and endorsements, the Policy provides coverage under a Directors and Officers and Company Coverage Section (the "D&O Coverage Section").

10. Insuring Agreement A(1) of the D&O Coverage Section states that Scottsdale shall pay the **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the **Company** and which the **Directors and**

**Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the Scottsdale pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**. (Ex. 1 at D&O Coverage Section § A(1).)[1]

11. Insuring Agreement A(2) of the D&O Coverage Section states that Scottsdale shall pay the **Loss** of the **Company** for which the **Company** has indemnified the **Directors and Officers** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected, the **Extended Period**, and reported to Scottsdale pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**. (Ex. 1 at D&O Coverage Section § A(2).)

12. Insuring Agreement A(3) of the D&O Coverage Section states that Scottsdale shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against the **Company** during the **Policy Period**, or, if applicable, the **Extended Period**, and reported to Scottsdale pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**. (Ex. 1 at D&O Coverage Section § A(3).)

13. The Policy defines **Claim** to include, among other things:

   a. a written demand, by one or more of the securities holders of the **Company** upon the board of directors, the management board of the **Company**, or the **Company**, to bring a civil proceeding, including any derivative action, against any of the **Directors and Officers** on behalf of the **Company**;

   b. a civil proceeding against any Insured seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

   . . .

---

[1] Bolded, capitalized terms refer to defined terms in the Policy.

(Ex. 1 at D&O Coverage Section § B(1) & Endorsement No. 15.)

14. **Insured** is defined in the Policy to mean the **Company** and the **Directors and Officers**. (Ex. 1 at D&O Coverage Section § B(5).)

15. The Policy defines **Company**, in relevant part, to mean the **Parent Company**, which is defined in the Declarations to be Flora, and any **Subsidiary**. (Ex. 1 at General Terms & Conditions § B(2).)

16. **Directors and Officers** is defined to include, among others, any person who was, now is, or shall become:

> a. a duly elected or appointed director, officer, or similar executive of the **Company**, or any member of the management board of the **Company**;
>
> . . .

(Ex. 1 at D&O Coverage Section § B(4)(a), as amended by Endorsement No. 11.)

17. **Loss** means damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and **Costs, Charges and Expenses** incurred by **Directors and Officers** under Insuring Clauses 1. or 2. or the **Company** under Insuring Clause 3. **Loss** does not include, among other things:

> a. matters uninsurable under the laws pursuant to which this **Policy** is construed;
>
> b. any amount for which the **Insured** is not financially liable or legally obligated to pay;
>
> . . .

(Ex. 1 at D&O Coverage Section § B(7)(e).)

18. **Costs, Charges and Expenses** means:

> a. reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in defending **Claims** and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability;

and

b. reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in investigating a written demand, by one or more of the securities holders of the **Company** upon the board of directors or the management board of the **Company**, to bring a civil proceeding against any of the **Directors and Officers** on behalf of the **Company**.

**Costs, Charges and Expenses** do not include salaries, wages, fees, overhead or benefit expenses of or associated with officers or employees of the **Company**.

(Ex. 1 at D&O Coverage Section § B(3).)

19. **Wrongful Act** is defined in the Policy to mean, in pertinent part, any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by any of the **Directors and Officers** while acting in their capacity as such, or any matter claimed against any **Director and Officer** solely by reason of his or her serving in such capacity. (Ex. 1 at D&O Coverage Section § B(9)(a).)

20. Section C(1)(e) of the D&O Coverage Section, as amended by Endorsement Nos. 12, 13, and 14, states that Scottsdale shall not be liable for **Loss** under the D&O Coverage Section on account of any **Claim**:

brought or maintained by, or on behalf of, in the right of, or at the direction of any **Insured** in any capacity, any **Outside Entity** or any person or entity that is the owner of or joint venture participant in any **Subsidiary** in any respect and whether or not collusive, unless such **Claim**:

a. is brought derivatively by a securities holder of the **Parent Company** and is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any **Insured**;

    b. is brought or maintained by any **Insured** in the form of a cross-claim, third-party claim or other proceeding for contribution or indemnity which is part of, and directly results from a **Claim** that is covered by this Coverage Section;

    c. is brought or maintained by an employee of the **Company** who is not or was not a director or officer of the **Company**, including any such **Claim** brought or maintained under the Federal False Claims Act or any similar federal, state, local or foreign "whistleblower" law or "whistle-blower" provision of any law;

    d. is brought or maintained by any former director or officer of the **Company** solely in their capacity as a securities holder of the **Company** and where such **Claim** is solely based upon and arising out of **Wrongful Acts** committed subsequent to the date such director or officer ceased to be a director or officer of the **Company** and where such **Claim** is first made two (2) years subsequent to the date such director or officer ceased to be a director or officer of the **Company**;

    e. is brought or maintained by or on behalf of a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator or rehabilitator for, or creditors' committee of, the **Company**, or any assignee thereof**;**

    f. is brought or maintained in a jurisdiction outside the United States of America, Canada or Australia by any **Insured** of the **Company** solely where such **Company** is domiciled or chartered in such foreign jurisdiction.

(the "Insured v. Insured Exclusion"). (Ex. 1 at D&O Coverage Section § C(1)(e), as amended by Endorsement Nos. 12, 13, and 14.)

    21.    The Policy states: "It shall be the duty of the **Insurer** and not the duty of the **Insureds** to defend any **Claim**. Such duty shall exist even if any of the allegations are groundless, false or fraudulent. The **Insurer's** duty to defend any **Claim** shall cease when the Limits of Liability have been exhausted by the payment of **Loss** including **Costs, Charges and Expenses**." (Ex. 1 at D&O Coverage Section § F(1).)

## The Derivative Action

22. On or about December 17, 2018, Terry Gross ("Gross"), a shareholder of Flora, made a demand that Flora's Board of Directors pursue legal action against Dr. John Alderete ("Alderete") for his alleged gross mismanagement of Flora, dereliction in his duties as CEO of Flora, and waste of Flora's resources, which allegedly caused damages to Flora of at least $6 million (the "Derivative Demand"). A copy of the Derivative Demand is attached hereto as "Exhibit 2."

23. On or about May 11, 2021, Gross filed a lawsuit, individually and derivatively on behalf of Flora, against Alderete; Robbins, in his capacity as a member of Flora's Board of Directors; Stoll, in his capacity as a member of Flora's Board of Directors; and Flora as a nominal Defendant, Case No. RG20062143 in the Superior Court of the State of California, County of Alameda (the "Underlying Action").

24. In the complaint filed in the Underlying Action (the "Underlying Complaint"), Gross alleged that Alderete misrepresented FDA clearance procedures to Flora in order to obtain months of salary, that Alderete misled investors about the status of the FDA clearance, causing some shareholders to purchase more stock in Flora, and that Robbins and Stoll failed to properly oversee Alderete and allowed him to act in a self-interested manner. A copy of the Underlying Complaint is attached hereto as "Exhibit 3."

25. According to the Underlying Complaint, in May 2019, Gross assumed the role as sole director of Flora. (Ex. 3, ¶ 38.)

26. Gross alleged in the Underlying Complaint that he resigned as a director in June 2019 because Flora was unable to secure a "new D&O policy, as its prior carrier refused to renew its policy due to Alderete's misconduct." (Ex. 3, ¶ 38.)

27. In the Underlying Complaint, Gross set forth the following causes of action: (1) breach of fiduciary duty against Alderete, directly; (2) breach of fiduciary duty against Robbins and Stoll, directly; (3) breach of fiduciary duty against Alderete, derivatively; and (4) breach of fiduciary duty against Robbins and Stoll, derivatively.

(Ex. 3.)

28. On November 3, 2020, Gross filed an amended complaint in the Underlying Action (the "Underlying Amended Complaint"). A copy of the Underlying Amended Complaint is attached hereto as "Exhibit 4."

29. In the Underlying Amended Complaint, Gross sets forth the same causes of action based on the same alleged wrongdoing by the same defendants as the Underlying Complaint. (Ex. 4.)

30. On February 26, 2021, the Underlying Action was transferred to the Superior Court of California, County of Santa Clara, Case No. 21CV376485.

31. On July 20, 2023, Gross filed an amended notice of a motion to approve a conditional settlement agreement and mutual release amongst Gross, Robbins and Stoll, along with a supporting memorandum. The memorandum indicates that, as a result of mediation on January 6, 2023, Gross, acting both in his individual capacity and derivatively, entered into a settlement agreement with Robbins and Stoll.

## **Scottsdale's Coverage Position**

32. After Scottsdale was provided with notice of the Derivative Demand, Scottsdale issued a letter on April 12, 2019 to Alderete, in which Scottsdale advised that, while the Derivative Demand did not constitute a **Claim** against any **Insured**, Scottsdale had appointed defense counsel to represent Alderete in response to the Derivative Demand, subject to a reservation of rights. A copy of Scottsdale's April 12, 2019 coverage letter to Alderete is attached hereto as "Exhibit 5."

33. On October 31, 2019, Scottsdale issued a supplemental coverage letter to Alderete, in which it advised that based on Gross' appointment to the Company's Board of Directors, Gross constitutes an **Insured** as defined in the Policy, and thus the Derivative Demand is precluded from coverage in accordance with the Insured v. Insured Exclusion. Scottsdale further advised that it would be withdrawing from any further defense of the Derivative Demand, but would pay any fees and expenses incurred by Scottsdale's appointed defense counsel through November 8, 2019 so as to

give Alderete sufficient time to retain new counsel. A copy of Scottsdale's October 31, 2019 supplemental coverage letter is attached hereto as "Exhibit 6."

34. Scottsdale was subsequently provided with a copy of the Underlying Complaint and, on August 31, 2020, issued a coverage letter to Alderete, in which it fully denied coverage for the Underlying Action based on the Insured v. Insured Exclusion, because the Underlying Action is a **Claim** brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity (Gross). Scottsdale raised other coverage issues and defenses that may be applicable to the Underlying Action and reserved all of its rights and defenses under the Policy and at law. A copy of Scottsdale's August 31, 2020 letter is attached hereto as "Exhibit 7."

35. Stoll and Robbins, through their counsel, subsequently provided Scottsdale with a copy of the Underlying Complaint and Underlying Amended Complaint filed in the Underlying Action and, on December 16, 2020, Scottsdale issued a coverage letter to them, in which it again advised that the Insured v. Insured Exclusion fully precludes coverage for the Underlying Action. A copy of Scottsdale's December 16, 2020 letter is attached hereto as "Exhibit 8."

36. On April 29, 2021, different counsel for Stoll and Robbins wrote to Scottsdale, contesting Scottsdale's coverage position with respect to the Underlying Action. By letter dated May 18, 2021, Scottsdale responded to all of the substantive points raised by Stoll and Robbin's counsel. A copy of Stoll and Robbin's counsel's April 29, 2002 letter is attached hereto as "Exhibit 9" and a copy of Scottsdale's response letter is attached hereto as "Exhibit 10."

## COUNT I – DECLARATORY JUDGMENT AS TO INSURED V. INSURED EXCLUSION

37. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38. Scottsdale maintains that the Derivative Demand and Underlying Action (the "Underlying Matters") fall within the plain and unambiguous scope of the Insured

v. Insured Exclusion because the Underlying Matters were brought or maintained by an **Insured** as defined in the Policy and none of the exceptions to the Insured v. Insured Exclusion applies.

39. Thus, Scottsdale does not have, and never had, any defense or coverage obligations with respect to the Underlying Matters.

40. An actual, present, and justiciable controversy exists concerning whether the Insured v. Insured Exclusion bars coverage for the Underlying Matters under the Policy.

41. Scottsdale requests that the Court declare that the Insured v. Insured Exclusion bars coverage for the Underlying Matters under the Policy and, as a result, Scottsdale has no duty to defend and/or indemnify the Defendants in connection with the Underlying Action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Scottsdale prays that this Court enter an Order:

1. declaring that the Insured v. Insured Exclusion bars coverage for the Underlying Matters under the Policy and, as a result, Scottsdale has no duty to defend and/or indemnify the Defendants in connection with the Underlying Matters;

2. awarding Scottsdale its costs, expenses, and attorneys' fees together with pre- and post-judgment interest to the greatest extent allowed by law; and

3. awarding Scottsdale all other relief that the Court deems just and equitable.

DATED:  August 4, 2023              **COZEN O'CONNOR**

_____
 Valerie Rojas
 Attorneys for Plaintiff
 SCOTTSDALE INSURANCE COMPANY